DENVER PRODUCING & REFINING CO. v. STATE et al.

No. 32445. Sept. 23, 1947.

*184 P. 2d 961.*

Stanley B. Catlett, of Oklahoma City, for plaintiff in error.

Floyd Green, Conservation Atty., and Charles F. White, both of Oklahoma City, for defendants in error.

BAYLESS, J. On June 26, 1945, the Corporation Commission promulgated Order No. 17920, Cause CD 979, establishing a limited permissible producing gas-oil ratio of 2,000 cubic feet per barrel of oil in the West Edmond Hunton pool. Application was filed by plaintiff in error, Denver Producing & Refining Company, hereinafter referred to as applicant, before the Corporation Commission, on September 7, 1945, to amend said order by fixing a gas-oil ratio of 5,000 cubic feet per barrel of oil. After a hearing in which considerable evidence was taken for and against the application, the commission entered an order denying the application, from which order applicant has appealed to this court. For a period of three years prior to the filing of the application herein the commission had fixed flat allowables for the West Edmond Hunton pool, and at the time of the hearing the daily per well allowable was 150 barrels.

The effect of the two separate orders, i.e. the flat allowable order and the

gas-oil ratio order, was that each well was limited to a maximum daily production of 300,000 cubic feet of gas or 150 barrels of oil, whichever was produced first. If the order had been amended as requested by applicant, the maximum allowable per well would have been 750,000 cubic feet of gas or 150 barrels of oil, whichever was produced first. There were 571 oil producing wells in this pool. Of this number, eight wells produced with a gas-oil ratio in excess of 5000-to-1; 13 wells in excess of 4000-to-1; 48 wells in excess of 3000-to-1; and 128 wells in excess of 2000-to-1. The average of gas-oil ratio for the entire pool at the time of the hearing was 1895 cubic feet per barrel of oil. Thirty-five per cent of the oil wells in the pool were penalized by the order complained of. Applicant had 27 or 28 producing wells, 13 of which were high gas-oil ratio wells. The penalty to applicant for not being able to produce the full amount authorized by the flat allowable order amounted to $30,000 per month. Applicant's wells were high on the structure and therefore had a high gas-oil ratio since gas migrates up structure. Approximately 142,000,000 cubic feet of gas was produced daily from the field, one-half of which was being vented into the air. If the application had been granted an additional 34,000,000 cubic feet of gas would have been vented into the air, also only one and one-half per cent of the wells in the entire pool would have been restricted in the production of gas.

Applicant did not challenge the validity of the flat allowable order nor did it seek to have it set aside or amended. It complains that the fixing of a flat allowable and further restricting said flat allowable by an arbitrary gas-oil ratio of 2000-to-1 is such a departure from ratable taking as fixed by the statute, and does such violence to the correlative rights as to amount to a confiscation of property without due process of law.

Three petroleum engineers testified that no conservation would be practiced so far as reservoir energy was concerned if the ratio were raised to 5000-to-1, that a greater ultimate recovery of oil could be had if the gas-oil ratio remained at 2000-to-1. Applicant's expert witness testified that reservoir energy dissipated in one place will dissipate the energy for the entire field. Two and a half months after the denial of the application, the commission entered an order establishing a gas-oil ratio of 3072-to-1, based on the average gas-oil ratio for the entire pool. This took into account the gas in solution with the oil, which was 908 cubic feet of gas to each barrel of oil. The record does not show whether the gas in solution was taken into consideration in computing the average of 1895-to-1 mentioned above. It was established by evidence that the gas-oil ratio of the pool will increase as the resources of the pool are depleted. The average ratio for the entire pool was approximately 1000-to-1 shortly after it was brought in in 1943.

Applicant does not question the power of the commission to establish flat per well allowables or its power to fix gas-oil ratios, but it contends that a combination of the two has resulted in unreasonable discrimination against it.

In Grison Oil Corp. v. Corporation Commission, 186 Okla. 548, 99 P. 2d 134, the commission established a flat marginal allowable of 165 barrels daily for each well in a particular pool. This absorbed almost all of the daily allocation for the entire pool, however the balance of the allocation was allocated to the wells on a potential basis. Grison Oil Company challenged the power of the commission to make such an order. He held, paragraph one of the syllabus:

"The Corporation Commission may by order in connection with the administration of the proration law (ch. 131, S.L. 1933) establish a flat minimum or marginal allowable, for oil wells producing from the same common source of supply, in excess of the 25-barrel minimum established by statute (sec. 6,

ch. 131, S.L. 1933) when such minimum or marginal allowable will result in the prevention of physical waste of oil or gas energy and does not constitute an unreasonable departure from the policy of ratable taking or where such order is consistent with the prevention of such waste and will result in the protection of correlative rights of individual operators."

In the opinion, at page 551, we said:

"The prevention of waste by application of governmental power and supervision recognizes the interest of the state in the preservation and proper usage of an exhaustible natural resource of inestimable value to the general welfare of the people as a whole. It is therefore justified upon invocation of the police power of the state. Sterling Refining Co. et al. v. Walker et al., 165 Okla. 45, 47, 48, 25 P. 2d 312, 315. But private rights are also involved in the application of this power. While they must yield to its reasonable exercise, it is not contemplated that they be annihilated thereby, or that they be interfered with to any greater extent than is reasonably required by a proper exercise of the power, taking into consideration the legitimate object to be accomplished. State ex rel. Roth, Trustee, v. Waterfield, Court Clerk, 167 Okla. 209, 29 P. 2d 24. The requirement of ratable, or proportionate, taking is designed for the protection of private rights of individual operations. And while it may be said that private rights are subordinate to a proper exercise of the police power and therefore ratable taking which is designed to protect the former must yield to an application of the police power to prevent waste, it is equally true that in determining what is proper exercise of the power, the extent to which private rights are impaired as well as the extent of the public benefit to be derived are both important factors. State ex rel. Roth, Trustee, v. Waterfield, Court Clerk, supra. Thus prevention of waste in a normal or inconsequential amount cannot be said to justify a radical departure from percentage production. It is difficult if not impossible to prescribe any definite formula for balancing these two factors if they conflict. We shall not undertake the task in this opinion, except to observe that a rule of reasonableness must apply and that the variation from ratable taking must be no greater than the occasion warrants. The resolution of the conflict must in the first instance rest with the commission, and its judgment is, of course, presumptively correct."

Title 53 O.S. 1941 §86, as amended, Laws 1945, p. 156, §3, provides that the commission shall have authority and is charged with the duty of preventing the inefficient or wasteful utilization of gas in the operation of oil wells producing from a common source of supply, of preventing the production of gas in such quantities or in such manner as unreasonably to reduce reservoir pressure or unreasonably to diminish the quantity of oil or gas that might be recovered from a common source of supply, and of preventing the escape of gas from oil wells into the air in excess of the amount necessary in the efficient drilling, completion or operation thereof.

In Railroad Com. v. Rowan & Nichols Oil Co., 310 U.S. 573-585, 84 L. Ed. 1368, the Texas Railroad Commission made allowables to marginal wells so high (20 barrels per day) and those wells were so numerous that the allowance left for the wells operating on a potential formula was small. Application to them of the potential formula resulted in an allotment of about 22 barrels a day to each well. Protestant urged that the order of the commission violated the due process clause of the Constitution of the United States because it took no account of the difference in the wells, of the richness or thickness of the sand, of the estimated oil reserves, or of the acreage upon which the wells were situated. As further grounds for striking down the order protestant established that the Railroad Commission had frequently granted permission for departure from its well spacing and drilling rules whereby the field had been drilled with irregular density. It was contended that, as a consequence, the more densely drilled tracts adjoining protestant's leases would, by virtue of the marginal allowances, produce oil

in such quantities as to drain away protestant's reserves. The court, in upholding the order of the commission, said, p. 1373:

". . . such cases are only episodes in the evolution of adjustment among private interests and in the reconciliation of all these private interests with the underlying public interest in such a vital source of energy for our day as oil. . . . A controversy like this always calls for fresh reminder that courts must not substitute their notions of expediency and fairness for those which have guided the agencies to whom the formulation and execution of policy have been entrusted.

". . . Certainly in a domain of knowledge still shifting and growing, and in a field where judgment is therefore necessarily beset by the necessity of inferences bordering on conjecture even for those learned in the art, it would be presumptuous for courts, on the basis of conflicting expert testimony, to deem the view of the administrative tribunal, acting under legislative authority, offensive to the Fourteenth Amendment . . ."

In Railroad Commission of Texas v. Rowan & Nichols Oil Co., 311 U.S. 570, 61 S. Ct. 343, 85 L. Ed. 358, the same type of proration order involved in the earlier Rowan & Nichols Oil Co. case, supra, was before the court except that the formula of allocation took into consideration two other factors — bottom hole pressure and the quality of the surrounding sand of the wells—as well as hourly potential. This order was likewise sustained by the court.

In Railroad Commission of Texas v. Fain (Tex. Civ. App.) 161 S. W. 2d 498, it was held:

"That the Railroad Commission's proration order would result in economic loss to owner of some of wells in oil field was not controlling in determining validity of order, since such result is incident to 'police power' of state to regulate any business affected with a public interest, so long as it treats all alike."

It will thus be seen (from the foregoing authorities) that the application of conservation measures necessarily results in curtailment of production of oil, gas or both in order to prevent waste and to obtain the greatest ultimate recovery from the pool. Experience has taught us that the heedless dissipation of gas reservoir energy of oil pools has resulted in the loss of many millions of barrels of oil. We take judicial knowledge of this fact. In most instances it is impossible to use a formula which will apply equally to all persons producing from a common source. In striking a balance between conservation of natural resources and protection of correlative rights, the latter is secondary and must yield to a reasonable exercise of the former. If the 5000-to-1 ratio had been established, the efficacy of the order from a conservation standpoint would have been negligible. The commission has the power and is charged with the duty of conserving gas and subject to the rule of reasonableness, promulgate an order directed against allowing natural gas not conveniently necessary for other purposes to come to the surface without its lifting power having been utilized to produce the greatest quantity of oil. The commission did not use an arbitrary figure in establishing the 2000-to-1 ratio. This was based upon the average gas-oil ratio for the entire pool. Perhaps the commission could have applied a formula which would have resulted in greater equality and less inequity but the court must not substitute its notion of expediency and fairness for that which guided the commission to whom the formulation and execution of policy have been entrusted. The continuing supervising power of the commission makes it possible to keep such inequities to a minimum. The order was not arbitrary and it does not unreasonably discriminate against the applicant.

The order is affirmed.

HURST, C.J., DAVISON, V.C.J., and RILEY, WELCH, CORN, and LUTTRELL, JJ., concur.