## SPIERS v. MAGNOLIA PETROLEUM CO. et al.

No. 33655.   Oct. 23, 1951.

Rehearing Denied May 27, 1952.

*244 P. 2d 843.*

Hall & Cotten, Oklahoma City, for plaintiff in error.

Walace Hawkins and Raymond Myers, Dallas, Tex., and W. R. Wallace, Oklahoma City, for defendant in error Magnolia Petroleum Company.

GIBSON, J.  This is an appeal from an order of the Corporation Commission of the State of Oklahoma entered

on March 29, 1948, in its cause No. CD 1602, being its order No. 21065, entitled "In the Matter of the petition for the creation of a Chitwood Cunningham Sand Unit, having for its purpose the Unitized Management, operation and further development of the Cunningham Sand Common Source of Supply of Oil and gas in Grady County, Oklahoma, and defining the unit area thereof and prescribing the plan of unitization applicable to such unit and unit area."

On November 13, 1947, Magnolia Petroleum Company filed its petition with the Corporation Commission of the State of Oklahoma praying an order authorizing the unitization and unitized development, operation and production of oil and gas from the Cunningham Sand underlying certain acreage in the Chitwood field in Grady county, Oklahoma, as authorized by H. B. 339, S. L. 1945, p. 162, 52 O. S. 1941 §§286.1-286.-17. To this petition was attached a map of the land area to be included in the proposed unit and a proposed detailed plan of unitization. Later the Ohio Oil Company, a lease holder, joined in the petition of Magnolia.

Thereafter, C. C. Spiers, the owner of a quarter section of land, one-half of which was within the proposed map and one-half without the map, filed his protest and for grounds stated that the proposed plan was unfair, unjust and inequitable and a violation of the terms of his lease, and that petition and plan did not reflect facts sufficient to justify unitization of his land. He further pleaded that the proposed plan, if applied to him, would be in violation of his contractual rights and in violation of rights guaranteed to him by the Constitution of the United States and the Constitution of the State of Oklahoma.

Hereafter we shall refer to Magnolia Petroleum Company, petitioner and defendant in error, as "Magnolia", and to C. C. Spiers, protestant and plaintiff in error, as "Spiers", and the Corporation Commission of the State of Oklahoma as "the Commission".

After several hearings in which the Commission heard not only the testimony of witnesses offered by the parties but other persons who appeared, claiming to be interested, the Commission made its findings of fact and conclusions of law and entered its order by which it granted the petition of Magnolia and created the Cunningham Sand Unit of the Chitwood field to embrace the acreage set forth in the map and adopted the plan of unitization proposed by Magnolia. Thereafter, Spiers filed his exceptions and motion for new trial and properly lodged his appeal to this court.

The petition in error sets forth twelve assignments of error but in his brief Spiers presents his complaint of errors under two general heads, to wit: (1) insufficiency of the evidence to support the order of the Commission; (2) invalidity and unconstitutionality of the statute under which the unitization was applied for and under which the application for unitization was granted.

The order complained of is lengthy, requiring sixteen pages of the record. We shall summarize: The Commission found that it had jurisdiction of the cause; that the lands shown in the map or plat offered in evidence are underlaid with oil and gas or gas condensate bearing formations known as the Cunningham Sand; that it was a common source of supply of gas condensate and other hydro-carbons in the Chitwood field found at a depth ranging from 10,600 to 11,300 feet; that the average thickness of the sand was approximately 40 feet; that all parts of the sand are permeably connected so as to permit the migration of condensate from one portion of the common source of supply to another; that no faults are known to exist in the common source of supply underlying the unit area; and that the outer boundaries of said common source of supply in the unit area have been reasonably defined by actual drilling operations.

It was further found that the royalty interests under the land are divided

among 180 royalty owners; that Magnolia is the lessee of record of 99.02% of the total area of the common source of supply and that 100% of the lessees of record of the area have subscribed to the plan of unitization.

It found that under the best known methods of individual or pressure depletion methods of operation not more than 45% of the condensate or other hydro-carbons originally in place in the reservoir can be produced and that by and through unitized methods of operation approximately 83% of the condensate can be economically recovered. That the unitized methods of operation described in the plan as applied to the common source of supply are feasible and will prevent waste.

It was further found that the plan of unitization attached to and made a part of the order is one suited to the needs of the Cunningham Sand unit and that it was fair, reasonable and equitable and contains all provisions necessary to protect and safeguard the rights of persons affected including land, mineral and royalty owners and others interested, as well as the lessees.

The plan of unitization was approved. The order provided that nothing therein was to be construed as a waiver by the Commission of any of its powers or authority over the Cunningham Sand unit, and the Commission retained continuing jurisdiction over the operations carried on by the unit.

The record is voluminous. The reporter's volume containing pleadings and a transcript of testimony contains more than 500 pages and there are in addition two volumes of exhibits. We have carefully reviewed the entire record as required under S. L. 1941, p. 544, §1, since the question has been raised as to the constitutionality of the legislative Act.

"Under article 9, sec. 20, Constitution of Oklahoma, as amended by Senate Bill 61, S. L. 1941, on appeal from the Corporation Commission this court is required to review the evidence, and must sustain the order appealed from if it is supported by substantial evidence." Pannell v. Farmers Union Co-Op. Gin Ass'n, 192 Okla. 652, 138 P. 2d 817; Yellow Transit Co. v. State, 198 Okla. 229, 178 P. 2d 83.

We are of the opinion that this order of the Commission was sustained by sufficient and substantial evidence. Of necessity, from the very character of the issues presented, the principal evidence offered by both parties was the testimony of expert witnesses,—geologists and petroleum engineers. Well qualified experts of wide experience testified on both sides of this case and when we summarize their testimony we find that they are not far apart on most of the substantial issues.

For Magnolia Dr. W. E. Moreman, its chief geologist, and W. H. Speaker, a petroleum engineer, testified. It would encumber this opinion to recite their testimony in detail. Both had made studies of the Chitwood field. They fixed the depths of the Cunningham sand; testified as to drilling tests; produced an isopach map showing the limitations of the Cunningham sand area, and other maps and charts showing depths of wells and thickness of sands. They furnished an analysis obtained from the core laboratories of the sand and its porosity and permeability. Dr. Moreman testified as to the location of each of the eight wells drilled through the Cunningham sand and in detail as to what was shown by the electric logs and the tests of sand samples; and that the Cunningham sand zone had been reasonably well defined by actual drilling operations.

Mr. Speaker testified that this sand contains high carbon fluids which are in the gas phase in the reservoir and that the reservoir will lend itself to unitized pressure maintenance operations; that pressure maintenance in several fields in which he had experience had made it possible to increase recovery and prevent wastage of gas, and similar results would, in his opinion, result in this zone under unitiza-

tion. He stated that this reservoir is a long, narrow anti-cline with its axis running northwest-southeasterly in direction which would lend itself readily to pressure maintenance by gas injections, due to its shape, inasmuch as it would enable the operators to sweep away wet gases from one end of the reservoir to the other, by injection of gas at one end and extraction from the other, and that this method was considered by engineers to be a most efficient type of operation. He said that 45% of the condensate initially in place would be recovered by primary methods now used and estimated that under pressure maintenance 83% of condensate would be recovered. He further testified that the plan submitted was fair, reasonable and equitable; that the unit was a single, common source of supply, and had been reasonably defined by drilling operations. He further testified that the development of this unit would not have any adverse effect upon the remainder of the common source of supply and that all parties affected would receive their equitable share of condensate in the reservoir.

Without further recital of details we learn from a review of this record that if the Commission found these experts to be credible witnesses then each finding of the Commission, which involved expert testimony, was supported by sufficient and substantial evidence.

For Spiers, B. T. Murphree qualified as a petroleum engineer and practical geologist who for several years has been a consultant geologist and petroleum engineer. He testified that he had heard the testimony of the geologist and engineer for Magnolia, in which they attempted to delineate the area covered or underlaid with the Cunningham sand, and that with one exception he was in agreement with them as to the location and boundaries of the effective Cunningham sand. He produced an isopach map of the Cunningham sand, which he had prepared, and testified that he believed that the area might extend and be productive much

further to the north and northeast; that no information has been presented which would limit the Cunningham sand zone to the north and northeast. He did not believe that there had been enough drilling to determine the extent of the field to the north and northeast. Under his map more of Spiers' land would be included and that, with the additional land of Spiers' included in the effective pay area, approximately 10 per cent of the total productive area would be allocated to Spiers instead of the distributive share of 3.3085% shown on the Magnolia map.

From the order of the Commission it is evident that the Commission placed great credence in the testimony of the experts for Magnolia to the effect that the Cunningham sand area had been reasonably defined by the drilling operations of that area. From this record we cannot say that the Commission was not justified in acceptance of that opinion of the experts. "Under section 22, article 9, of the Constitution, all orders made by the Corporation Commission are presumed to be reasonable until the contrary is made to appear. This presumption in favor of the reasonableness of orders made by the Corporation Commission was created by the Constitution of the state for a definite purpose, and cannot be disregarded by this court unless the contrary is made to appear." Bryan v. State ex rel., 133 Okla. 213, 271 P. 1020.

Spiers insists that Dr. Moreman for Magnolia admitted that the area had not been defined to the north and northeast and that there is a possibility of extension of the Cunningham sand area in those directions. It is said that if more of Spiers' land is found to be productive, the present percentages of royalty distribution would not be equitable. It is further said that since Magnolia owns in leases and mineral rights more than 99% of the leasehold or working interest, only Magnolia could move to give the Commission jurisdiction to amend the plan for the reason that under 52 O. S. 1941 §286.11, such

an amendment can be made only upon the petition of the lessees of record of 10% or more the unit area.

The argument is based upon a hypothetical situation that may or may not arise. If future development to the north and northeast should reveal that the Cunningham sand area actually extends beyond the limits provided in the order, and if Magnolia then refuses to move for an amendment of the plan, and if the Commission cannot act upon its own motion, under its retention of jurisdiction specifically provided in the order, to amend the plat and plan, it would seem that Spiers would still have a remedy given to him in 52 O. S. §286.7, by appealing to the civil courts. But we are not now called upon to pass upon this hypothetical case. We are called upon to ascertain if this order as made by the Commission is sustained by substantial evidence, and we hold that it is so sustained.

The Commission had this very contention of inequitable percentages of distribution of royalties before it. The Commission found that under the present individual and competitive methods of operation, treating each tract or lease as a separate operating unit, there has been and continues to be a disproportionate, inequitable and wasteful dissipation of gas energy in the pool to the detriment and disadvantage of the pool as a whole. The Commission is concerned with the waste of natural resources, and rightfully so. Denver Producing & Refining Co. v. State, 199 Okla. 171, 184 P. 2d 961.

Spiers complains of the testimony of Magnolia's two expert witnesses to the effect that the Cunningham sand area outside the proposed unit would not be materially affected by adoption of the plan, and says that such testimony is of no value because the experts were not possessed of knowledge of sufficient facts upon which to base such opinions. He cites 20 Amer. Juris. on Evidence, §795, as to the general rule concerning expert testimony, and Myers v. Shell Petroleum Corp., 110 P. 2d 810, a Kansas case in which the test of the sufficiency of expert testimony is discussed.

In another case involving unitization, the Myers case was distinguished by this court in Palmer Oil Corp. v. Phillips Petroleum Co., 204 Okla. 543, 231 P. 2d 997, and the same distinction applies in the case at bar.

It is not necessary that a proposed unit area shall embrace the named sand area in its entirety. Section 286.5 provides that each unit or unit area shall be limited to all or a portion of a single source of supply and it further provides that a unit may be created to embrace less than the whole of a common source of supply under certain requirements of proof.

The Commission made the following finding:

"13. That the unit area of the Cunningham Sand Unit of the Chitwood Field probably embraces less than the whole of the Cunningham Sand common sources of supply, but it has been shown by the evidence, and the Commission finds, that the area to be so included within the unit area is of such size and shape as may be reasonably required for the successful and efficient conduct of the unitized method or methods of operation for which the unit is created, and that the conduct thereof will have no material adverse effect upon the remainder of such common source of supply."

This character of issue between the parties is one that is necessarily to be determined by the opinion testimony of expert witnesses. Magnolia's expert witnesses were shown to be highly qualified. They were familiar with the field from its inception. They testified in detail as to the possibility of the proposed unit and plan. The Commission was concerned with this proposed unit. The expert witnesses gave reasonable and logical reasons, based upon known facts, for their opinions, and the Commission was justified in accepting the testimony of the witnesses as to the effect of operation of the unit upon the

remainder of the common source of supply.

Section 286.7 of the Act provides for appeals from Commission orders and also provides:

"On appeal the order of the Commission appealed from shall be regarded as prima facie valid, fair, reasonable and equitable, but if the order is found to be contrary to the clear weight of the evidence, in any one of such respects the same shall be vacated and set aside. . . ."

Under this presumption in favor of the validity of the order, the protestant or appellant must assume the burden of showing that the order is contrary to the weight of the evidence. Palmer Oil Corp. v. Phillips Petroleum Co., supra.

The Commission is peculiarly experienced and fitted to formulate and execute the legislative policy, and this court will not substitute its notion of expediency and fairness for that of the Commission. Denver Producing & Refining Co. v. State, supra; Peppers Refining Co. v. Corporation Commission, 198 Okla. 451, 179 P. 2d 899.

Spiers introduced evidence of several lay witnesses who testified that royalties would sell for 25% to 50% less under unitization. None of these witnesses attempted to qualify as experts. None of them except Mr. Spiers himself owned or dealt in royalties in the Chitwood field, but some of them had owned or dealt in royalties in another field which had been unitized. We fail to see where this character of testimony was competent to the issues presented in the case at bar. We note from the record that the land and royalty owners of 96.13% of the area executed the voluntary contract agreeing that the Cunningham sand zone might be united in this proposed plan.

There is evidence, sufficient and substantial, in this record to approximately define the area of the Cunningham sand; to determine with reasonable certainty the percentage of unit production which should be allocated to the protestant Spiers and to determine with reasonable certainty that the plan of unitization will have no material adverse effect upon such portion of the Cunningham sand area which may hereafter be proven not to be included within the approved unit.

Plaintiff in error for his last proposition says that the statute, 52 O. S. 1941 §§286.1 to 286.17, H. B. 339, S. L. 1945, p. 162, under which this proposed compulsory plan of unitization is to be effected, is invalid because it is in contravention of both the Federal and State Constitutions and invades constitutional rights guaranteed under the Constitution of Oklahoma and of the United States.

Since the filing of the briefs and submission of the case at bar, this court has rendered its opinion in Palmer Oil Corp. v. Phillips Petroleum Co. and Sterba v. Corporation Commission, 204 Okla. 543, 231 P. 2d 997, wherein we upheld the constitutionality of the Act in question. The opinion and the dissents filed reflect the careful consideration given to the attack on the theory that the Act was violative of provisions of the State and Federal Constitutions.

We have reviewed the briefs filed in the Palmer case and find that the same provisions of the Constitution of the United States, to wit: the Fourteenth Amendment and Art. I, §10, and the following sections of the Constitution of Oklahoma: §§7, 23, 24 and 15 of art. II, §1, art. IV and §§1 and 51, art. V, were urged by the plaintiffs in error in both cases as being violated by this Act of the Legislature. The principal citations of authorities stressed by the plaintiff in error here were before the court in the Palmer Oil Corporation case.

We see no reason to depart from the holding in the case of Palmer Oil Corp. v. Phillips Petroleum Co., supra. It is controlling in the case at bar in so

far as the constitutionality of the Act is concerned.

The order of the Commission is affirmed.

HALLEY, V.C.J., and CORN, JOHNSON, and BINGAMAN, JJ., concur.