**Earl A. POWELL, Appellant,**

v.

**KHODARI–INTERGREEN CO. and Green Construction Co., Appellees.**

No. 64912.

Supreme Court of Iowa.

March 18, 1981.

John P. Dollar, of Seery & Dollar, Des Moines, for appellant.

James L. Sayre, of Dreher, Wilson, Adams, Jensen, Sayre & Gribble, Des Moines, for appellees.

Considered by HARRIS, P. J., and ALLBEE, McGIVERIN, LARSON and SCHULTZ, JJ.

LARSON, Justice.

The determinative question for review does not concern the merits of this litigation, but whether the district court possessed the power to adjudicate the merits of certain claims in the plaintiff's petition. The district court dismissed two tort claims from the petition for lack of subject-matter jurisdiction, and alternatively, for failure to state a claim upon which any relief can be granted. We reverse and remand.

Because acquisition of subject-matter jurisdiction over a particular controversy depends on the facts existing at the time it is invoked, our review requires an acceptance of the facts as they appear from the face of the petition.[1] *Walles v. International Brotherhood of Electrical Workers*, 252 N.W.2d 701, 706 (Iowa 1977).

This case is illustrative of the problems arising out of the rapid growth of international legal relationships. A written contract of employment was entered into between the plaintiff Earl A. Powell, an Iowa resident, and the defendant Khodari-Intergreen Co., a Saudi Arabian partnership. The defendant Green Construction Co., an Iowa corporation which "directed and controlled the hiring and termination" of Khodari's American personnel, negotiated the agreement with Powell in Des Moines, Iowa, where he resided. During the negotiations, Powell was led to believe that if he signed the contract he would in fact be a Green employee since Khodari was merely one of its foreign affiliates, and that the company would provide suitable living and working conditions in Saudi Arabia, as well as an opportunity for long-term employment. Relying on these representations, Powell agreed to a twelve-month period of employment as a carpenter foreman.

---

1. Including, as in this case, any amendments thereto.

Powell began his employment in Saudi Arabia but soon became disenchanted: "it became apparent . . . that the representations made [during the contract negotiations] were not being fulfilled, and would not be fulfilled despite [his] protests and requests for compliance." Powell requested that in accordance with provisions in the contract, Khodari furnished him transportation to the United States and his accrued wages. Although Khodari's representatives initially agreed to comply with this request, when the time for his departure came near delivery of his passport, plane ticket, and wages was conditioned on his signing of a "release." Powell refused to sign. Khodari responded by withholding the items, warning him that the Saudi Arabian authorities would soon be notified that he was no longer a Khodari employee, which would result in his arrest and deportation. Powell sought assistance from the United States Embassy, which was able to persuade Khodari to return Powell's plane ticket, passport and his wages. With these effects in hand, Powell left Saudi Arabia.

This action was commenced by Powell upon his return to the United States. In his petition he claimed damages for breach of contract and sought to impose liability on Khodari and Green individually. In addition, Powell claimed actual and punitive damages for extreme emotional distress from each defendant under two theories: that Khodari—and Green, its "controlling" company—in attempting to force his signing of the release (1) acted intentionally, willfully, and maliciously and (2) violated an Iowa criminal statute, section 720.1, The Code 1979 ("malicious threats to extort"), for which they were civilly liable.

The defendants essentially made a general denial and the matter proceeded to trial. Prior to the selection of the jury, however, the district court entertained motions from the parties. The defendants moved to dismiss the tort claims from Powell's petition for lack of subject-matter jurisdiction. The motion was sustained on the jurisdictional ground, and alternatively for failure to state a claim upon which any relief can be granted, Iowa R.Civ.P. 104(b). This appeal followed Powell's voluntary dismissal of his contractual claims against the defendants.

I. *Dismissal for lack of subject-matter jurisdiction.* Several principles of subject-matter jurisdiction can be gleaned from our earlier decisions. "Subject-matter jurisdiction means the power to hear and determine cases of the *general class* to which the proceedings belong." *Wederath v. Brant,* 287 N.W.2d 591, 594 (Iowa 1980) (emphasis added); *see In re Estate of Dull,* 303 N.W.2d 402, 406 (Iowa 1981); 20 Am. Jur.2d, *Courts* § 88, at 449 (1965); 21 C.J.S., *Courts* § 105, at 464–65 (1940). It is a power which does not originate with inherent judicial power or from the consent of the litigating parties; rather, subject-matter jurisdiction is conferred solely by constitutional or statutory provision. *O'Kelley v. Lochner,* 259 Iowa 710, 715, 145 N.W.2d 626, 629 (1966); *see* 1 Restatement (Second) of Conflict of Laws, Introductory Note to ch. 3, at 102 (1971); Restatement of Judgments § 7, Comment *a* at 41 (1942). In this state, the source of the district court's jurisdiction is Article V of the Iowa Constitution, which provides that "[t]he district court shall . . . have jurisdiction in civil . . . matters arising in their respective districts, in such manner as shall be prescribed by law." Iowa Const. Art. V, § 6 (1857). This directive has been implemented by the legislature in section 602.1, The Code 1979:

> [The district court] shall have exclusive, general and original jurisdiction of all [civil] actions, proceedings, and remedies . . . and it shall have and exercise all the power usually possessed and exercised by trial courts of general jurisdiction.

§ 602.1, The Code 1979. The statute, in broadly defining the district courts as courts of general jurisdiction, negates the necessity for a plaintiff to allege proper subject-matter jurisdiction in his petition: he need only allege "sufficient facts to demonstrate a prima facie case of subject-matter jurisdiction." *Walles v. International Brotherhood of Electrical Workers,* 252 N.W.2d 701, 706 (Iowa 1977); *see generally* F. James & G. Hazard, *Civil Procedure* § 12.02, at 605 (1977); A. Vestal & P. Will-

son, *Iowa Practice* § 8.01, at 57 (1974). Ideally, questions of jurisdiction should be resolved as soon as possible after the filing of a petition since "the parties, the witnesses, and the public should not be put to the inconvenience and expense of a trial, only to be told, after the trial is over, that they were in the wrong courthouse and must go to another for a new trial." *Mobil Oil Corp. v. Kelley*, 493 F.2d 784, 786 (5th Cir.), *cert. denied*, 419 U.S. 1022, 95 S.Ct. 498, 42 L.Ed.2d 296 (1974). Nevertheless, a district court has a duty to dismiss for lack of subject-matter jurisdiction at any stage of the proceedings. *In re Estate of Dull*, 303 N.W.2d at 404.

While section 602.1 establishes that our district courts are courts of general jurisdiction, this classification does not mean they possess exclusive jurisdiction over actions they *may* hear. It is well-established that "[t]he general rule is that an action for tort is transitory in nature and can therefore be instituted in any court which has jurisdiction in personam of the defendant, regardless of where the cause of action arose ..." 20 Am.Jur.2d, *supra* § 123, at 478 (footnote omitted); *see Moreland v. Rucker Pharmacal Co., Inc.*, 59 F.R.D. 537, 540–41 (W.D.La.1973). Thus, a plaintiff with a transitory cause of action will often have a wide choice of courts having concurrent jurisdiction in which to file his lawsuit. *See* A. Kuhn, *Comparative Commentaries on Private International Law* 304 (1937); 20 Am.Jur.2d, *supra* § 106, at 465. But even though a plaintiff ordinarily has the right to select his forum, this right is not without limitations: A court may be unable to adjudicate the matter for reasons of venue, forum non conveniens, or in personam jurisdiction, even though proper subject-matter jurisdiction exists. *See generally* 1 Restatement (Second) of Conflict of Laws, *supra*, at 100–105.

The defendants, which have conceded proper venue and personal jurisdiction as well as the inapplicability of forum non conveniens, weave an intricate argument on the reasons why the district court lacked the power to adjudicate Powell's tort claims. Relying on *Flogel v. Flogel*, 257 Iowa 547, 133 N.W.2d 907 (1965), they argue that in order to establish subject-matter jurisdiction over a claim arising outside the state, Powell was required to plead and prove that the claim "would have been cognizable in a court of the foreign jurisdiction" and that its "enforcement by the Iowa district court would not offend the policy of this state." These arguments, however, are predicated not on subject-matter jurisdiction but on conflict-of-laws and pleading principles. *See generally* 16 Am.Jur.2d, *Conflict of Laws* § 7, § 8, at 18–23 (1979). Subject-matter jurisdiction is not dependent on whether the petition has established a meritorious claim. We make no determination on this appeal whether Powell's claim entitles him to relief under our law.

We emphasize two further points. First, this case does not involve the classic jurisdictional problem of determining whether personal jurisdiction over the defendants exists. In such instances, the focus usually relates to constitutional problems of due process. *See, e. g., Al-Jon, Inc. v. Garden Street Iron & Metal, Inc.*, 301 N.W.2d 709, 714 (Iowa 1981). In contrast, the fighting issue in the present case is jurisdiction of the subject matter, primarily involving an examination of legislative grants of power. Second, although we have recently approved the use of forum non conveniens as grounds for sustaining a special appearance in an action arising out of events occurring in a foreign state, *Silversmith v. Kenosha Auto Transport*, 301 N.W.2d 725, 729 (Iowa 1981), that doctrine is quite a different concept from that of subject-matter jurisdiction since it presupposes jurisdiction, *id.* And, were we to apply the *Silversmith* principles to the facts of this case, we would conclude that the most appropriate forum for the litigation of Powell's tort claims is in Iowa.

II. *Dismissal under rule 104(b)*. This court is foreclosed from deciding whether the plaintiff, in his petition, has presented a claim on which any relief can be granted. There is merit in plaintiff's contention that the district court lacked au-

thority to dismiss his tort claims under rule 104(b).

Iowa Rule of Civil Procedure 85(a) provides that "[m]otions attacking a pleading must be served before responding to a pleading." In *Riediger v. Marrland Development Corp.*, 253 N.W.2d 915, 916 (Iowa 1977), the court determined that a motion to dismiss, "[l]ike a demurrer, . . . must be filed before answer" since it is a motion "attacking a pleading." *See Ohlen v. Harriman*, 296 N.W.2d 794, 795 (Iowa 1980); Vestal & Willson, *supra* § 15.06, at 310.

In the present case the defendants failed to move for dismissal under rule 104(b) prior to the filing of their answer; in fact, the record discloses that no such motion was ever filed by the defendants. Rather, the defendants argued a "motion to dismiss" in their trial brief and then, prior to the selection of the jury, orally moved to dismiss Powell's tort claim. Under such circumstances, the district court was without authority to rule on the defendants' oral motion.

REVERSED AND REMANDED.