In the Matter of the Application of KOCH EXPLORATION COMPANY For an Order Providing For the Unit Operation of the South Buffalo Red River Unit, Harding County, South Dakota: and To Amend the Board's Oil and Gas Order No. 2–78 and All Previous Board Orders Pertaining To Spacing in Buffalo Field, Harding County, South Dakota, To Provide For One Hundred Sixty (160) Acre Spacing Units For the South Buffalo Red River Unit, Harding County, South Dakota: Oil and Gas Order No. 1–83.

Nos. 14853, 14854.

Supreme Court of South Dakota.

Argued Sept. 10, 1985.

Decided May 14, 1986.

Jon Mattson of Driscoll, Mattson, Rachetto & Christensen, Deadwood, for appellants Dave Penn, Sherman Teigen, John Mattson, William C. Kirkwood, d/b/a Kirkwood Oil Co. and Viable Resources, Inc.

Reed C. Richards of Richards & Richards, Deadwood, for appellants Kathryn Ann Hight and Alyce Smolnikar.

Scott Sumner and Robert D. Buettner of Banks & Johnson, Rapid City, for appellee Koch Exploration Co.

HERTZ, Acting Justice.

## STATEMENT OF FACTS

This appeal involves the propriety of the Board of Minerals and Environment's (Board) grant of appellee Koch Exploration Company's (Koch) application for unitization of a portion of the Buffalo Oil Field located in Harding County, South Dakota. We affirm.

In order to understand the nature of this appeal it is helpful to be cognizant that when oil is initially discovered, it flows or is pumped to the surface via wells, assisted by natural pressure existing in the subsurface. This process is termed "primary" recovery of oil. As the natural pressure dissipates, oil production declines. Production can sometimes be restored by injecting water (termed "secondary" recovery) or other substances, in this case air, (termed "tertiary or enhanced" recovery) through wells to restore or increase pressure. This restoration is expensive and oftentimes can only be made cost effective if various owners of tracts of land consolidate their resources in order to maximize their return of oil. This consolidation occurs via what is termed unitization. Unitization may be voluntary or involuntary. If involuntary it is termed compulsory unitization, defined in Williams and Meyers, *Oil and Gas Law,* Manual of Terms, at 800–801 (1983), as:

> The bringing together, as required by law or a valid order or regulation, of separately owned tracts (or separate interests therein) into a unit constituting all or some portion of a producing reser-

Roxanne Giedd, Asst. Atty. Gen., Pierre, for South Dakota Board of Minerals and Environment; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

voir and a joint operation of such unit....

.... In general, under these statutes, a state regulatory agency is given authority to impose unitization on a pool or part thereof as against the objection of a small minority interest if a proposed plan has been approved by a requisite majority (e.g., 75 percent) of the owners of operating interests and certain non-operating interests....

To achieve the maximum objectives of a unitization program it is necessary that all persons having an interest in the program area become subject to the agreement. Without statutory authority compulsions, however, unanimity is frequently impossible to obtain. The principal obstacle to full, voluntary agreement is the problem of dividing the proceeds of production. Even under a compulsory unitization statute, the problem of dividing the proceeds of production creates considerable difficulty inasmuch as most compulsory unitization statutes require prior agreement of a substantial majority of the persons interested in the area to be unitized to a unitization plan, and agreement must be reached by such persons on such matters as division of the proceeds of development before the regulatory commission may act upon the plan.

Pursuant to SDCL 45-9-38, the Board has the authority to order the compulsory unitization of various tracts "if it finds that (1) such operation is reasonably necessary to increase substantially the ultimate recovery of oil and gas; and (2) the value of the estimated additional recovery of oil or gas exceeds the estimated additional cost incident to conducting such operations." The tracts usually encompass a common reservoir of oil called a pool. Furthermore, SDCL 45-9-45 provides that the order for unitization "may provide for unit operations on less than the whole of a pool...."

The Buffalo Oil Field lies in the northwest portion of Harding County and has produced oil since the mid-1950's. Production decreased substantially over the years, however, and in 1978 Koch obtained a unitization order allowing it to begin a multimillion dollar experimental "enhanced oil recovery" program in a small portion of the Buffalo field, termed the North Buffalo Unit. Due to the success of this program, Koch gained approval of two expansions to the North Buffalo Unit so that it now contains some 7,600 acres. Oil production in the southern portion of the field also decreased, and on December 22, 1982, Koch sought to establish a second enhanced oil recovery operation in the Buffalo field, denominated the South Buffalo Red River Unit. As previously stated, authority to grant such a request is vested in the Board. Board scheduled a hearing concerning Koch's application for February 17, 1983. Notice of the hearing was published on January 27, 1983, in the *Daily Capital Journal* published in Pierre, South Dakota, and in the *Nation's Center News* published in Buffalo, Harding County, South Dakota. The hearing took place as scheduled. Present or represented by counsel were appellants Dave Penn, Sherman Teigen, Jon Mattson, William C. Kirkwood, d/b/a Kirkwood Oil Company, Viable Resources, Inc., Kathryn Ann Hight, Alyce Smolnikar and appellee Koch. Appellants sought to exclude certain tracts from the unit because they felt they were not receiving their fair share of oil allocation and revenue. Koch opposed such exclusion and presented testimony that if appellants' tracts were deleted, appellants would be in a position to recover oil made available to them only by reason of the enhanced oil recovery operations without having to pay their share of the expense of such enhanced recovery. At the close of the testimony Board ordered the parties to submit proposed findings of fact and conclusions of law for consideration at the March meeting. At that meeting Board adopted Koch's proposals with some minor changes.

■ The Board entered its order, Oil and Gas Order No. 1-83, approving and establishing the South Buffalo Red River Unit effective as of 7:00 a.m. on June 1, 1983.

Appellants made application to the Board for a rehearing, which the Board denied

after hearing evidence and oral argument at its April meeting.

Appellants then noticed an appeal of Order 1–83 to the circuit court. The trial court affirmed in part and remanded to the Board for a determination as to whether any parties exist who have property interests within the unitization area who did not receive due notice of the Koch application for unitization. As to appellants, the judgment provides the appellants are bound by Order 1–83 and are limited in their participation in the remand proceedings to matters involving new evidence or new issues that are introduced.

On January 9 and 11, 1985, the various appellants appealed this matter to the Supreme Court. At the same time, the Board initiated the remanded hearing pursuant to the circuit court's judgment. The Board found that all but two persons received constitutionally sufficient notice. The Board then determined to hold the hearing for the two remaining mineral owners in abeyance pending the decision on this appeal. The remand hearing held by the Board, after notice of appeal was filed, was a nullity since the Board had lost jurisdiction pending the outcome of the appeal to this court. We, therefore, conclude this appeal is from a final judgment.

## UNITIZATION IN SOUTH DAKOTA

■ South Dakota's oil and gas conservation law appears at SDCL chapter 45–9. SDCL 45–9–1 declares the purpose of this law:

It is hereby declared that it is the public interest to foster, to encourage, and to promote the development, production, and unitization of natural resources of oil and gas in the state of South Dakota in such a manner as will prevent waste; to authorize and to provide for the operation and development of oil and gas properties in such a manner that a greater ultimate recovery be had and that the correlative rights of all owners be fully protected; and to encourage, to authorize, and to provide for cycling, recycling, pressure maintenance, and secondary re-

covery operations in order that the greatest possible economic recovery of oil and gas be obtained within the state to the end that the landowners, the royalty owners, the producers, and the general public realize and enjoy the greatest possible good from these vital natural resources.

"Waste" is defined at SDCL 45–9–2(1) as:

(a) physical waste, as that term is generally understood in the oil and gas industry;

(b) the inefficient, excessive or improper use of, or the unnecessary dissipation of reservoir energy;

(c) the inefficient storing of oil and gas;

(d) the drilling of unnecessary wells;

(e) the locating, spacing, drilling, equipping, operating, or producing of any oil and gas well or wells in a manner that causes, or tends to cause, reduction in the quantity of oil and gas ultimately recoverable from a pool under prudent and proper operations, or that causes or tends to cause unnecessary or excessive surface loss or destruction of oil and gas;

(f) the underground or above ground waste in the production or storage of oil and gas, however caused, and whether or not defined in other subdivisions hereof.

SDCL 45–9–3 states, in pertinent part:

"The waste of oil and gas is prohibited; . . ."

No clearer mandate to the Board could exist.

As mentioned earlier, SDCL 45–9–1 also requires that correlative rights be fully protected. The protection of correlative rights is defined at SDCL 45–9–2(15):

'Protect correlative rights' means that the action or regulation by the board should afford a reasonable opportunity to each person thereto to recover or receive the oil and gas in his tract or tracts or the equivalent thereof, without being required to drill unnecessary wells or to incur other unnecessary expense to re-

cover or receive such oil or gas or its equivalent.

The statutes governing the issuance of an order for the unit operation of a pool (unitization) appear at SDCL 45-9-37 through 45-9-52, inclusive. Of particular interest in the instant case are:

—SDCL 45-9-38, requiring the Board to order unitization if it finds that unitization is reasonably necessary to substantially increase the ultimate recovery of oil and gas, and that the value of the estimated additional recovery exceeds the cost of the secondary recovery/unitization operations;

—SDCL 45-9-39, which lists the requirements of the Board's unitization order;

—SDCL 45-9-40, which requires approval of the plan for unit operations prescribed by the Board by 75% of the royalty owners and of the working interest owners;

—SDCL 45-9-45, which allows the Board to establish unit operations on less than the whole of a pool, when the conduct of those operations will not have an adverse effect on other portions of the pool.

The utilization of secondary recovery techniques is an extremely costly venture. The cost of injecting a substance into the earth hundreds of feet below the surface to increase the pressure in a producing oil zone must be weighed against the value of the increased amount of oil produced under those conditions.

The entire pool is affected by secondary recovery techniques. This means that every well producing oil from that pool will be affected by the increased pressure and will benefit by producing an increased amount of oil. This is why the costs of these techniques should be spread over the entire pool.

Because unitization requires unanimity between a large group of mineral owners, problems arise. As pointed out by Williams and Meyers, *Oil and Gas Law*, § 910, n. 6 (1983), the chance nature of the oil business tends to make that unanimity impossible:

It has long been urged that efficiency in the development and operation of oil and gas reservoirs and the prevention of waste of recoverable hydrocarbons require that such reservoirs be developed and operated as a unit without regard to surface boundaries. To achieve the maximum objectives of such a unitization program it is necessary that all persons having an interest in the program area become subject to the agreement. Without statutory compulsion, however, unanimity is frequently impossible to obtain. The principal obstacle to full, voluntary agreement is the problem of dividing the proceeds of production. If development of the area sought to be unitized is incomplete, there is a certain amount of gambler's instinct to be overcome; some lessors and lessees may be inclined to rely on the possibility that their interests lie in the most favorable part of the producing structure and to take their chances that the entire production from their land will be more valuable than an undivided interest in production from a much larger unitized tract. (Footnotes omitted)

As can be seen by a review of South Dakota's unitization statutes and the purpose of unitization in general, the Board's duties when considering a unitization application are two-fold; first, it must authorize oil and gas operations to be conducted in a reasonable manner in order to prevent waste. Second, it must protect the correlative rights of all persons with a legal interest in the oil and/or gas.

█ These duties have been characterized as a balancing act in *Gilmore v. Oil and Gas Conservation Commission*, 642 P.2d 773, 779 (Wyo.1982), a case involving an administrative appeal of a unitization order:

.... substantial waste cannot be countenanced by a slavish devotion to correlative rights. We are faced with a delicate balancing problem between prevention of waste and correlative rights, but prevention of waste is of primary importance.

*See also: Denver Producing and Refining Company v. State,* 199 Okl. 171, 184 P.2d 961 (1947), another administrative appeal:

> In striking a balance between conservation of natural resources and protection of correlative rights, the latter is secondary and must yield to a reasonable exercise of the former.

The appeal of a unitization order is a case of first impression in South Dakota. (Indeed, *Application of Kohlman,* 263 N.W.2d 674 (S.D.1978), is the only other case of an administrative appeal of an oil or gas order.) Therefore, the Board's duty in considering a unitization application must be viewed in light of the State's statutes and the underlying purpose of unitization itself; it must be viewed as the balancing problem it is, a balancing between the waste of oil in the pool (wasted because it is *unrecoverable* unless secondary or enhanced recovery operations are initiated) and the protection of everyone's correlative rights—Koch's as well as the appellants'.

### SCOPE OF REVIEW

The South Dakota Administrative Procedure Act, SDCL chapter 1–26, controls the judicial review of administrative agency decisions.

 In several decisions issued since the amendment of SDCL 1–26–37 in 1983, this court has held that, despite new language resulting from the amendment, we still review a decision of an administrative agency in essentially the same manner as we did before the amendment. The required deference to the circuit court has not changed. *State Division of Human Rights v. Miller,* 349 N.W.2d 42 (S.D.1984); in the Matter of the *Application of Northwestern Bell Telephone Company,* 382 N.W.2d 413 (S.D.1986). In these cited cases, we also have said in an administrative appeal, the trial court's decision is based entirely on the written record of the agency. We are as fully capable of reading the agency record as was the trial court. We, therefore, review the agency record in the same light as does the trial court to determine whether or not the

agency's decision was clearly erroneous. Further, in reviewing an administrative agency record, this court is not bound by any presumption that the decision of the circuit court was correct. *Matter of Ackerson,* 335 N.W.2d 342 (S.D.1983). The construction of a statute is a question of law and it is the duty of the Supreme Court to decide whether the law has been correctly applied by the agency and the trial court.

### I

### WHETHER THE BOARD HAD SUBJECT MATTER JURISDICTION AS WELL AS PERSONAL JURISDICTION AS TO APPELLANTS?

 Subject matter jurisdiction is conferred solely by constitutional or statutory provisions. *Powell v. Khodari-Intergreen Company,* 303 N.W.2d 171 (Ia.1981). Furthermore, subject matter jurisdiction can neither be conferred on a court, nor denied to a court by the acts of the parties or the procedures they employ. *In Re Marriage of Helm,* 271 N.W.2d 725 (Ia.1978).

 Pursuant to SDCL 1–32–2, the legislature established the Department of Water and Natural Resources. As a subdivision thereof, the legislature, pursuant to SDCL 1–40–25, established an administrative agency termed the Board of Minerals and Environment. SDCL 45–9 regulates oil and gas conservation within the state of South Dakota. Specifically, SDCL 45–9–54 and SDCL 45–9–57 clearly confer subject matter jurisdiction to the Board:

> SDCL 45–9–54
> The Board of Minerals and Environment has jurisdiction and authority over all persons and property, public and private, necessary to enforce effectively the provisions of this chapter.
> SDCL 45–9–57
> On the filing of a petition concerning any matter within the jurisdiction of the Board of Minerals and Environment that requires a hearing, the Board shall promptly fix a date for a hearing thereon and shall cause notice of the hearing to be given. The hearing shall be held

without undue delay after the filing of the petition. The Board shall enter its order within thirty days after the hearing.

■ Appellants also contend that the Board's failure to wait sixty days from the time Koch filed its petition to hold a hearing also deprived the Board of subject matter jurisdiction. Appellants rely on ARSD 74:10:09:07, which provides in part "the application for an order for unit operation ... shall be submitted to the Board at least sixty days before the date requested for a hearing." (This rule has since been repealed.) Nevertheless, we hold that this administrative rule did not confer subject matter jurisdiction upon the Board to enable it to order unit operation. Rather, this rule was advisory only. It is the statutes above set out that confers subject matter jurisdiction on the Board. Beyond that there is no showing by appellants that their substantial rights were affected by this error.

■ It is quite apparent that appellants equate personal jurisdiction with subject matter jurisdiction. Appellants' contention fails for several reasons. Although we have stated that notice by publication in matters affecting private property interests where the owners of the property are known or should be known, is constitutionally insufficient (*In Re Matter of South Dakota Water Management Board*, 351 N.W.2d 119 (S.D.1984)), it does not follow that the lack of proper notice deprived the Board of subject matter jurisdiction, because subject matter jurisdiction cannot be denied to a tribunal due to the actions (or inactions) of the parties. Furthermore, the basis for constitutional requirement of notification is to give parties an opportunity to be heard. 62 Am.Jur.2d *Process* § 2 (1972). In this case, it is undisputed that appellants made a general appearance at all proceedings before the Board, not once objecting to lack of personal jurisdiction, but participating fully in the presentation of their own testimony, as well as cross-examining Koch's witnesses. Therefore, the effect of improper notice as to any of

appellants is meaningless. Personal jurisdiction can be waived but subject matter jurisdiction cannot.

■ Appellants argue that the Board's error has resulted in a void order which is binding on no one. As a matter of fact, however, Oil and Gas Order 1–83 is not void in toto, rather it is void only as to those persons who have not waived this issue, via a general appearance as appellants did here. This precise issue, the status of a unitization order issued after defective notice, has been discussed in *Louthan v. Amoco Production Company*, 652 P.2d 308 (Okla.App.1982). The court there held that the unitization order is void only as to those persons over whom the Board failed to obtain personal jurisdiction. We agree with the trial court that the Board did have personal jurisdiction over the appellants herein.

## II

WHETHER SDCL 45–9–58 IS UNCONSTITUTIONAL?

The relevant part of SDCL 45–9–58 states:

Any notice required by this chapter shall be given at the election of the Board of Minerals and Environment either by personal service or by one publication in a newspaper of general circulation in the state capitol city and in a newspaper of general circulation in the county where the land affected, or some part thereof, is situated....

■ Only appellants Hight and Smolnikar presented this issue at the Board hearing. Only the appellant raising an issue on appeal is entitled to take advantage of that assignment of error. *Novotny v. Bouley*, 27 N.W.2d 813 (Minn.1947). All other appellants failed to present this issue at the Board hearing. Here appellants Hight and Smolnikar had actual notice of the hearing. Furthermore, the record shows that all appellants participated in the proceedings before the Board by presenting witnesses and by cross-examining Koch's witnesses. Under these circum-

stances, appellants have no standing to now challenge the constitutionality of SDCL 45–9–58. While the trial court found SDCL 45–9–58 to be constitutional, we do not need to reach that issue under this record. *Insurance Corp. of Ireland v. Compagnie Des Bauxites*, 456 U.S. 694, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982), states the law:

> In sum, the requirement of personal jurisdiction may be intentionally waived, or for various reasons a defendant may be estopped from raising the issue. These characteristics portray it for what it is—a legal right protecting the individual ... the actions of the defendant may amount to a legal submission to the jurisdiction of the court, whether voluntary or not.

Here, appellants by making a general appearance before the Board and participating in all phases of the hearing, waived any objection they may have had and submitted themselves to the jurisdiction of the court.

### III

WHETHER THE BOARD'S FINDINGS OF FACT MAKE ADEQUATE REFERENCE TO THE UNDERLYING FACTS SUPPORTING ITS ULTIMATE FINDINGS OF THE ISSUES, INCLUDING THE PROTECTION OF CORRELATIVE RIGHTS AND THE RELATIVE VALUES OF THE TRACTS, WITHIN THE UNIT AREA?

The appellants claim the decision of the Board does not protect their correlative rights. SDCL 45–9–2(15). They claim the Board did not protect their correlative rights by adopting the participation formula, and the inclusion in the unit of unproductive acreage.

From the beginning of the hearings commencing on February 17, 1983, through the March 17, 1983 hearing, appellants uniformly took the position that all they wanted was to delete certain lands from the unit. They repeatedly stated that they were not seeking to change the allocation formula. The only evidence presented to the Board at any of the hearings regarding the participation formula was presented by the expert witnesses of Koch. The appellants never submitted any evidence as to what they considered to be an appropriate allocation formula. They did present some evidence at the April hearing regarding the hypothetical impact of this formula upon their royalties.

Appellants' claim of error here must fail for at least two reasons. The first is that appellants failed to properly preserve these issues for appeal. None of the appellants made a record in the underlying proceedings in any way challenging the form or sufficiency of the Board's findings and order with regard to correlative rights or relative values of the separately owned tracts in the unit or the formula for allocating unit production. Nowhere did appellants offer an alternative allocation formula, even though invited to do so by the Board. Objections not raised before the administrative agency are not preserved for appeal. *Matter of S.D. Water Mgmt. Bd.*, 351 N.W.2d at 122. Secondly, the Findings of Fact adopted by the Board are accompanied by a concise statement of the underlying facts, especially when one considers the Unit Agreement itself, which was incorporated by reference in the Board's Findings. At Finding M, the Board states that allocation to the separate tracts shall be in accordance with the Unit Operating Agreement attached to the Unit Agreement, which, as pointed out, was incorporated, by reference, in the Board's Findings. The Board weighed the expert opinion evidence presented to it; its decision finds ample support in the record.

### IV

WHETHER THE BOARD'S DECISION WAS CLEARLY ERRONEOUS?

It is not the function of a reviewing court to substitute its judgment for an administrative board when it is legitimately exercising administrative power. *Application of Jack Rabbit Lines, Inc.*, 283 N.W.2d 402 (S.D.1979). This must be par-

ticularly true in oil and gas regulatory matters. In *Application of Kohlman supra,* which concerned an appeal from the decision of Natural Resource Development, we stated that:

It is obvious that the legislature has recognized that resolving the details required in the legislative area of regulating oil and gas recovery is better left to a qualified administrative board made up of members with expertise in the field of natural resources.

263 N.W.2d at 677.

We conclude, from a detailed review of the record, that the Board's decision issuing the unitization order was not clearly erroneous. The Board's decision was based on the expert testimonial evidence presented, and we therefore cannot say that we are left with a firm and definite conviction that a mistake has been committed.

Accordingly, the decision of the Board and the trial court is affirmed.

MORGAN, and WUEST, JJ., concur.

FOSHEIM, C.J., dissents.

HENDERSON, J., deeming himself disqualified did not participate.

SABERS, J., not having been a member of the Court at the time this action was submitted to the Court, did not participate.

FOSHEIM, Chief Justice (dissenting).

I dissent.

Under SDCL § 15–6–54(b), a decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and ... is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

In preventing piecemeal appeals, application of SDCL § 15–6–54(b) [on partial final judgment] is confined to those infrequent harsh cases where it will lead to the improved administration of justice and the

more satisfactory disposition of litigation. *Ochs v. Northwestern National Life Insurance Co.,* 254 N.W.2d 163, 169 (S.D. 1977). The facts and circumstances here clearly indicate the applicability of SDCL § 15–6–54(b). Since the trial court stepped over this statute, it follows there is no final judgment from which to appeal. *Riede v. Phillips,* 277 N.W.2d 720, 722 (S.D.1979).